Bullard, J.
Pending the proceedings in this case to annul the charter of the Bank, William Christy, notary public, who had been employed to make the inventory of the property and assets *199 of the institution, took a rule on the commissioners to show cause why they should not pay him the sum of three thousand dollars out of the moneys in their hands, by privilege, the same being the amount of fees due to him for taking an inventory of the monejr, property and effects of the defendants in this case. The bill accompanying this rule was in the following form:
“ The Commissioners of the Atchafalaya R. R., <fcc.
“ To William Christy, Notary Public, Dr.
“ To taking inventory of the money, property and effects of the said Bank, and making two copies thereof, making in all about 600 pages of foolscap paper, three thousand dollars . . #3000.” The commissioners excepted to the demand on the ground that it was made in a round sum, and does not detail the services rendered. Thereupon the plaintiff in the rule filed a detailed account, the first item of which is $824 58, for taking the inventory in two originals, &c., each containing 82,458 words and figures, at fifty cents for each 100 words and figures, the same having been made out of the office of the notary. The second item is $206 14 for making a copjn at twenty-five cents per hundred words and figures. The third item, $2000, is for extra services in cancelling and burning the notes of the said Bank, amounting in all to #1,648,810, signed and unsigned, and paraphing and paging books, papers, &c., according to the 13th section of the liquidating act, passed by the Legislature of this State. The total of the detailed account was $3030 70.
The court reduced the first item to #451 29, allowing for ono original at the rate of fifty cents per hundred words, made out of office, and for thirteen notarial attestations, also out of office, three dollars each.
This appears to us conformable to the Explicit Fee Bill. See Bullard & Curry’s Digest, 443. One of the originals charged, consisted of memoranda taken by the notary and attested by him, to serve as materials for drawing out the inventory in proper form. The notary was allowed for each attestation three dollars.
The next item was reduced one-half, because it did not appear that the copy was made out of the office of the notary. The Fee Bill allows at the rate of twelve and a half cents per hundred words for copies with attestation.
*200 The charge of $2000 for extra services in cancelling and burning the bank notes, was rejected in toto, as unauthorized by law.
The 13th section of the act of 1842, entitled “An act to provide for the liquidation of Banks,” makes it the duty of the notary, at the time of making the inventory, immediately and on the spot, to cancel and destroy, under the inspection of the Gommisers and ‘the Board of Currency, all the notes of said Bank which may be on hand at the time, even those not yet completed, if such there be; and this in presence of two witnesses, and of the officer or officers of the Bank, if any be present; of all which mention shall be made in the inventory. The preceding section authorizes the commissioners to take possession of all the effects of the Bank. The responsibility resulting from this custody of the property of the Bank rests entirely on the commissioners. The property is not confided for a moment to the care of the notary. It is his duty to destroy the bank notes on the spot, as soon as they are entered upon the inventory, and to make mention of the fact in the inventory. The certificate of the fact of burning or otherwise destroying the notes, formed a part of the inventory. The labor of merely destroying the notes is not as great as it would have been to number and file them, as is usual with papers which are to be inventoried, and as is required by the Code. See Civ. Code, art. 1097. The only difference between these inventories of Banks and other public inventories is, that in relation to the notes of the Banks found on hand, they are to be destroyed, instead of being put up in bundles and numbered; and we are not prepared to say that notaries can recover, as upon a quantum meruit, for these small services, which form an essential part of the labor of making an inventory as required by law.
But it is urged by the appellant, that the Sheriff was allowed by the court $1000 as sequestrator, and that his labor and responsibility were less than those of the notary.-,. The case of the Sheriff is not bpfore us, and, therefore, we|cannot institute any comparison between the two claims ; but, if the Sheriff had the custody of the sequestered assets of the Bank, he was entitled by law to a just compensation, to be determined by the court. Code of Pract. art. 283. HiS allowance may have been extravagant in this case, and he probably followed the common rule, *201 never to lose anything by not asking for enough ; but it certainly forms no standard by which to regulate the fees of the notary.

Judgment affirmed.